IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03185-MEH

CONCEPCION RIOS,

 Plaintiff,

v.

LEPRINO FOODS COMPANY,

 Defendant.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge.**

 Plaintiff Concepcion Rios ("Plaintiff") was an employee of Leprino Foods Company ("Defendant"). Plaintiff requested an accommodation to continue working through her pregnancy and now alleges that Defendant did not provide her sought accommodation, the circumstances of which are the subject of this lawsuit under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Plaintiff asserts two claims: (1) pregnancy discrimination in violation of the PDA and (2) FMLA interference. Defendant filed a motion for summary judgment ("Motion") as to both of Plaintiff's claims. ECF 57. For the reasons described herein, the Motion is granted in part and denied in part.

## **FINDINGS OF FACT**

 The following are the Court's findings of material facts that are relevant and either undisputed or supported by the record, when viewed in the light most favorable to Plaintiff as the non-moving party.

1. Defendant is a privately held corporation headquartered in Colorado, which manufactures cheese and dairy-related products. Exh. A ¶ 3, ECF 57-1.[1]

2. Defendant maintains a Harassment Prevention Policy and anti-discrimination standards that prohibit unlawful discrimination and harassment in the workplace. Exh. B, ECF 57-2; Exh. C at 30:11–31:4, ECF 57-3.

3. Defendant also maintains a Policy Regarding Reasonable Accommodation for Individuals with Disabilities. Defendant analyzed pregnancy-related requests in the same manner as other requests for accommodation, even though the policy does not mention pregnancy. It reviewed each request individually to see if a reasonable accommodation could be made that would not cause an undue hardship on other employees and/or company operations. Exh. A ¶ 4; Exh. C at 34:11–24; Exh. E at 25:20–27:6, ECF 57-5.

4. In determining whether a request for accommodations is reasonable, multiple factors Defendant considers, including, but not limited to, the duties required by the worker's position, the restriction which requires the accommodation, the duration of the requested accommodation, which shift the worker is on, and staffing levels at the time, which could involve taking production demands into account. Exh. A ¶ 4.

5. During Plaintiff's employment, Defendant also maintained a Leave of Absence Policy governing an employee's time off work. This policy covers leave for any reason including, but not limited to, FMLA. Exh. F, ECF 57-6; Exh. C at 43:18–44:14.

6. Defendant regularly provides training to its employees, including its supervisors, managers, and human resources personnel regarding its equal opportunity practices, including its

---

[1] The Court notes that it incorporated Plaintiff's statement of facts when appropriate. However, many facts were either disputed or not material to the Court's analysis.

prohibition of harassment, discrimination, and retaliation. Company representatives were also informed regarding leave of absence options and the processes regarding accommodations for medical conditions. Exh. C at 30:8–34:7, 34:11–24, 43:18–44:18.

7. Plaintiff began working at Defendant's Fort Morgan, Colorado facility in 2014 as a General Laborer. Exh. G at 25:6-13, 42:19–24, ECF 57-7.

8. Approximately three or four months after being hired as a General Laborer, Plaintiff bid for and was promoted to the position of Break Relief Operator in the Processing Department. *Id.* at 42:19–43:6.

9. At the Fort Morgan facility, Plaintiff's position required her to perform the job duties of six other positions within the Processing Department on a rotating basis to allow those operators to take breaks. As outlined in the Position Description for the Break Relief Operator, the individual filling this role is expected to lift up to fifty pounds. Exh H, ECF 57-8; Exh. A ¶ 5.[2]

10. Plaintiff admits that in her role as a Break Relief Operator, she was required to be able to lift up to fifty pounds. Exh. G at 179:17–23, 183:1–19.

11. Plaintiff admits that her role required her to lift thirty-pound boxes on a regular basis, sometimes with no notice or ability to call someone over to help. Exh. G at 74:12–76:4. In fact, Plaintiff asked her doctor to increase the amount she could lift to thirty pounds because of this. *Id.* at 177:11–178:20. Plaintiff testified that in addition to other occasions, this occurred when the palletizer robot at the end of the lines would break down. Normally, the robot would take the

---

[2] Plaintiff denies this fact by citing to the deposition testimony of other employees. Exh. 4 at 47:5–21, 79:2–20, ECF 60-4; Exh. 5 at 47:7–9, ECF 60-5. While the cited testimony may show that some individuals were assisted with lifting heavy items, the testimony does not controvert the position description which indicates that an "operator must work in extremely cold, noisy, and dusty environment with a moderate amount of lifting 50-pound weights." Exh. H.

boxes off the line and put them on a pallet; however, if the robot broke down, Plaintiff was required to hand stack the boxes until the robot was fixed. *Id.* at 72:22–75:1.

12. In the summer of 2017, Plaintiff learned she was pregnant and due to deliver her baby in April 2018. Exh. G at 11:20–22, 151:8–15.[3]

13. In September or October 2017, Plaintiff experienced morning sickness and migraines as a result of the pregnancy. Plaintiff chose to utilize FMLA leave at this time. Exh. G at 154:17-155:2; Exh. I, ECF 57-9.

14. In late November 2017, Plaintiff experienced complications with her pregnancy, including bleeding and contractions. Plaintiff also took FMLA at this time when her treating physician, Dr. Christine Black, put her on two weeks of bedrest. Exh. G at 156:18–157:19, 159:18–25.

15. Plaintiff returned to work on December 13, 2017 with a note from Dr. Black limiting her lifting to fifteen pounds for the duration of her pregnancy (approximately four months). Exh. G at 161:3–162:6.

16. All positions in the Processing Department for which Plaintiff was qualified, including Break Relief Operators and General Laborer positions, required lifting in excess of twenty pounds. Exh J at 10:4–13:24, ECF 57-10; Exh. K, ECF 57-11. In fact, the General Laborer position had an average lifting requirement of twenty-three pounds. Exh. K at 2.

17. Upon her return, Plaintiff met with the Manager of the Processing Department, Manley Frisbie, and Julia Lambert, Human Resources Supervisor at the Fort Morgan plant and provided them with a note from Dr. Black, with a lifting restriction of fifteen pounds. Mr. Frisbie and Ms. Lambert asked Plaintiff to obtain more information. They provided here with a job

---

[3] Despite these citations not being exactly on point, Plaintiff admits this fact.

description that they wanted signed by the doctor.  Exh. G at 162:9–163:14, 175:6–20; Exh. L at 56:16–62:9, ECF 57-12.

18. Upon Plaintiff's request, Dr. Black increased her lifting restriction from fifteen pounds to twenty pounds. Plaintiff inquired if Dr. Black could increase the lifting restriction up to thirty pounds because of her need to lift the thirty-pound boxes on a regular basis, but Dr. Black refused. Exh. G at 177:11–178:20.[4]

19. On December 18, 2017, Plaintiff again met with Mr. Frisbie and Ms. Lambert and provided them with her doctor's twenty-pound lifting restriction. At the meeting, Mr. Frisbie relayed his determination that her lifting restrictions could not be accommodated. He expressed concern that he could not live with anything happening to Plaintiff or her baby if she continued to work, given her doctor's restrictions. *Id.* at 189:14–192:22, Exh. L at 56:16–62:9, 67:4–18.

20. During this meeting and at all times after, Plaintiff did not request to be transferred to any other position, including General Laborer.  Exh. G at 188:18–192:11, 194:13–19.

21. Following the meeting, Plaintiff contacted Defendant's third-party administrator, Aetna, to get Defendant's suggested accommodation of FMLA leave and Short-Term Disability benefits.  *Id.* at 195:17–196:25.

22. Plaintiff remained on leave and received Short-Term Disability until May 20, 2018 (approximately six weeks after the birth of her son). Exh. N, ECF 57-14.  In total, Plaintiff received 60% of her pay for six months, the maximum benefits allowed under that policy.  Exh. G at 195:17–196:18; Exh. F at 2–3.

23. Plaintiff's son was born on April 8, 2018.  Exh. G at 228:13–17.

---

[4] Plaintiff denies this fact, but her own citation shows that Plaintiff requested an increase in the restriction.  Exh. G at 167:23–24 ("So I told her if she could give me the note saying that it was 20 pounds.").

5

24. Plaintiff exhausted her FMLA leave on February 20, 2018. Exh. O, ECF 57-15.

25. While Plaintiff's Short-Term Disability benefits ended on May 20, 2018, when her doctor declared that she was able to return to work with no restrictions, Plaintiff chose to remain off work until July 2, 2018 so as to care for her newborn. Exh. G at 228:13–229:3.

26. After several months on leave, Defendant reinstated Plaintiff to her same position as Break Relief Operator when she eventually returned to work on July 2, 2018. *Id.* at 229:22–230:11.[5]

27. In May 2019, Defendant provided lifting restriction accommodations for a non-pregnant Break Relief Operator in the Processing Department, Cassie Hornecker. Ms. Hornecker had a personal medical issue which required no strenuous activity and no lifting greater than five pounds for two weeks. Exh. A ¶ 7; Exh. P, ECF 57-16.

28. Primarily because Ms. Hornecker was still in training for the Break Relief Operator position, and she was merely doing e-learning and shadowing other operators (which did not require lifting), Defendant was able to accommodate her request. Exh. A ¶ 8.[6]

29. On two occasions, Defendant accommodated Kayla Del Campo, another Break Relief Operator in the Processing Department, for lifting restrictions due to pregnancy, once in 2019 and again in 2021. Ms. Del Campo worked a different shift than Plaintiff, which involved some different responsibilities and lifting requirements. Further, Ms. Del Campo first requested an

---

[5] The Court notes that paragraph thirty-two of the Complaint indicates that Plaintiff was fired sometime after returning to work. Compl. ¶ 32. However, the Complaint makes no allegation of discrimination arising from that termination.

[6] Plaintiff's denial of this fact violated this Court's Practice Standards, requiring that "[e]ach denial [of a fact] shall be accompanied by a brief factual explanation and a specific reference to evidence in the record supporting the denial." Practice Standards § III.F.

accommodation several months after Plaintiff. Defendant considered this (and every other) request in light of the circumstances at the time of the request. Exh. A ¶ 9.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense—his[, her, or its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Id*. at 1154 (quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)). Only evidence for which the content and substance are admissible may be considered when ruling on a motion for summary judgment. *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but

must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); see also *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting Celotex, 477 U.S. at 324); *see Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment.") (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

### I. Pregnancy Discrimination

Plaintiff asserts a PDA claim for disparate treatment. "[A] plaintiff can prove disparate treatment either by (1) direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) sing the burden-shifting framework set forth in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)]." *EEOC v. TriCore Reference Labs.*, 849 F.3d 929, 941 (10th Cir. 2017) (citation omitted). Plaintiff does not contend there is any direct evidence; thus, the Court will consider only indirect evidence under the *McDonnell Douglas* framework.

Under that framework, the plaintiff must first make out a prima facie case of discrimination. *Young v. United Parcel Service, Inc.*, 575 U.S. 206, 228 (2015). If the plaintiff does so, the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions. *Id.* at 229. If the defendant satisfies that requirement, then the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is in fact pretextual. *Id.*

A.   Prima Facie Case

As an initial matter, the parties disagree about the proper legal test for a PDA prima facie case. Defendant cites to a prior ruling from this Court utilizing a three-step test: a prima facie case exists when (1) the plaintiff belongs to the protected class, (2) the plaintiff suffered an adverse employment action, and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Ali v. Jerusalem Restaurant, Inc.*, No. 14-cv-00933-MEH, 2015 WL 1384372, at *4 (D. Colo. Mar. 23, 2015) (citing *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012)). Conversely, Plaintiff points to the four-step test articulated in *Young*: a plaintiff makes a prima facie case by showing that (1) the plaintiff belongs to the protected class, (2) the plaintiff sought accommodation, (3) the defendant did not accommodate her, and (4) the defendant accommodated "[other persons not so affected but] similar in their ability or inability to work." 575 U.S. at 229; 42 U.S.C. § 2000e(k). While Defendant is correct that the three-step test was used in PDA cases, including in *Ali*, that changed with the Supreme Court's ruling in *Young*.[7]  *See Legg v. Ulster Cnty.*, 820 F.3d 67, 73 (2d Cir. 2016) (noting that "the Court established a modified *McDonnell Douglas* analysis" in *Young*). Thus, the Court will apply the *Young* standard.

The plaintiff's prima facie burden for PDA disparate treatment claims is "not onerous." *Young*, 575 U.S. at 228. The plaintiff may establish a prima facie case "by 'showing actions taken

---

[7] In fact, *Ali* was decided two days before the Supreme Court issued the *Young* decision.

by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under' Title VII." *Id.*

Here, it is undisputed that Plaintiff is a member of the protected class. Nor can it be reasonably disputed that Plaintiff sought an accommodation. Because Defendant argues the old, three-step test, it does not reach the third element of whether Defendant failed to accommodate Plaintiff. However, the record demonstrates the Plaintiff did not receive her requested accommodation of having others help her lift things. Exh. G at 189:14–192:22. This is enough to establish the third element of Plaintiff's prima facie case. Similarly, Defendant does not exactly argue how Plaintiff fails to meet the fourth element; however, Defendant does contend that Plaintiff cannot establish discriminatory intent because Defendant accommodated other pregnant individuals. But the Court finds this analysis more appropriate for the pretext inquiry. At this stage, Plaintiff need only assert that Defendant accommodated others similar in ability or inability to work. Defendant admits that it accommodated Ms. Hornecker, a Break Relief Operator, with non-pregnancy related lifting restrictions. Mot. at 13; Exh. A ¶ 7. Because Plaintiff's burden at this stage is "not onerous," the Court finds that the fourth element is satisfied, and Plaintiff has established her prima facie case.

B.  Legitimate, Nondiscriminatory Reason

Defendant states that it "could not provide accommodations for Plaintiff's lifting restriction at the time of her request, and instead offered her a leave of absence with significant Short-Term Disability benefits." Mot. at 14. In conclusory fashion, Plaintiff asserts that Defendant "provided no legitimate, nondiscriminatory reason for denying the accommodation." Resp. at 27. The bulk of her argument suggests that she actually challenges summary judgment based on pretext. *Id.* at 1 ("Summary judgment is inappropriate in this case because Plaintiff has established a *prima facie*

10

case . . . and the Defendant's alleged legitimate nondiscriminatory reason . . . is merely pretext for pregnancy discrimination."). Indeed, Plaintiff's argument following her assertion that Defendant provided no legitimate, nondiscriminatory reason suggests that Defendant's proffered reason should not be believed. *Id.* at 27 ("Leprino could have accommodated [Plaintiff] in a variety of ways."). But that is an argument on pretext. *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017). The Court perceives no substantive challenge to whether Defendant's stated reason was legitimate and nondiscriminatory. Accordingly, the Court finds that Defendant has met its burden.

   C. <u>Pretext</u>

Generally, a plaintiff may demonstrate pretext by showing that "'the proffered reason is factually false,' or that 'discrimination was a primary factor in the employer's decision.'" *Id.* at 970 (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013)). "This is often accomplished 'by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.'" *Id*. (quoting *Tabor*, 703 F.3d at 1216). The Supreme Court has held that, in the PDA context, a plaintiff may reach a jury on this issue "by providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Young*, 575 U.S. at 229–30. Plaintiff points to three alleged facts to demonstrate evidence of Defendant's pretext: (1) Defendant failed to follow reasonable accommodation policies; (2) Defendant failed to consider moving Plaintiff to an open position; and (3) Mr. Frisbie's emphasis on the amount of lifting required by Break Relief Operators is not credible. Resp. at 30–36.

However, in arguing these three, Plaintiff glosses over a critical aspect to this case. The record establishes that Defendant has accommodated other pregnant workers in the exact way that Plaintiff wished to be accommodated. In fact, Plaintiff admits that Defendant "accommodated other employees with similar lifting restrictions to [her], including Kayla Del Campo, a pregnant Break Relief Operator in the Processing Department with a 20-pound lifting restriction." Resp. at 16, ¶ 58; Exh. 3; Exh 4 at 76:1–5, 81:14–82:6. Plaintiff attempts to distinguish Ms. Del Campo's situation by arguing that she worked the day shift which is a more strenuous shift in terms of lifting; put differently, Defendant was able to accommodate someone who needed more assistance than Plaintiff. *Id.* But focusing on the intensity of the shift misses the point. To establish her PDA claim, Plaintiff must demonstrate that Defendant's reasons for its actions "give rise to an inference of intentional discrimination" based on Plaintiff's pregnancy. *Young*, 575 U.S. at 299. The accommodation of another pregnant employee cuts strongly against the notion that Defendant was acting with an intent to discriminate on the basis of pregnancy.

Plaintiff argues that the fact Defendant accommodated Ms. Del Campo does not defeat her claim because the "focus of Title VII discrimination 'laws should be on individuals, not groups.'" Resp. at 28 (quoting *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1740 (2020)). Plaintiff is generally correct. However, the Supreme Court modified the *McDonnell Douglas* framework for PDA claims. *Young*, 575 U.S. at 299 ("This approach, though *limited to the Pregnancy Discrimination Act* context . . .") (emphasis added). The Supreme Court has expressly told PDA plaintiffs that they may show pretext "by providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Id.* The example provided by the Court is that an employee could show that the employer "accommodates most nonpregnant employees with lifting limitations while

12

*categorically* failing to accommodate pregnant employees with lifting restrictions." *Id.* (emphasis added). This is an inherently group-focused analysis. And the evidence in this case shows that Defendant did not categorically fail to accommodate pregnant employees with lifting restrictions. *See Aramburu v. Boeing Co.*, 112 F.3d 1404, 1406 n.4 (10th Cir. 1997) ("An employer's similar or favorable treatment of protected employees does not support an inference of discriminatory animus.").

Additionally, some of Plaintiff's other purported evidence of pretext fails to satisfy her burden. First, Plaintiff points to an alleged failure of Defendant to follow its accommodation policies. A primary issue with this argument is that Plaintiff relies heavily on an understanding that PDA claims contain the same elements as Americans with Disability Act ("ADA") claims. For instance, Plaintiff complains that Defendant did not engage in a proper interactive process with her. However, Plaintiff has cited (and the Court has found) no caselaw suggesting that a PDA and an ADA claim involve the same analysis. The weight of authority suggests that this is not the case, even post-*Young*. *See Luke v. CPlace Forest Park SNF, L.L.C.*, 747 F. App'x 978, 979 (5th Cir. 2019) (analyzing PDA claim under Title VII and not the ADA); *Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1285 (11th Cir. 2020) (same); *Legg v. Ulster Cnty.*, 820 F.3d 67, 72–73 (2d Cir. 2016) (same). Thus, any failure to exactly follow ADA related policies does not show that Defendant acted with discriminatory intent toward pregnant employees.

Furthermore, Plaintiff does not demonstrate how any company policies were meant to adversely affect pregnant employees. In *Young*, the Supreme Court held that a plaintiff can demonstrate pretext by pointing to "the fact that [the employer] has multiple policies that accommodate nonpregnant employees with lifting restrictions." *Young*, 575 U.S. at 299. But, as mentioned earlier, Defendant was able to accommodate other pregnant employees. As such, there

is evidence that Defendant did not simply accommodate nonpregnant employees but also pregnant employees. To the extent that Defendant did not follow the policies with regard to Plaintiff specifically, that alone does not establish a discriminatory intent. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1198–99 (10th Cir. 2008) ("[T]he mere failure of a company's employees to follow their employer's manuals and written directives, without more, does nothing to suggest discrimination, as opposed to perhaps, say, laxity on the part of company employees.").

Second, Plaintiff argues that the failure to consider accommodating her by moving her to an open position is evidence of pretext. Specifically, she contends that she could have performed the General Laborer job. Resp. at 33. As an initial matter, Plaintiff again relies on the ADA without citing authority for why any part of the ADA statutory framework applies in the PDA context. Regardless, the General Laborer position had an average lifting requirement of twenty-three pounds. Exh. K at 2. Plaintiff requested that Dr. Black increase her lifting restriction from fifteen pounds to twenty pounds which Dr. Black obliged. Exh. G at 177:11–178:20. Plaintiff inquired further if Dr. Black could increase the lifting restriction to thirty pounds, but Dr. Black refused. *Id*. By Plaintiff's own admission and her documented restrictions, she could not perform a job with an *average* twenty-three-pound lifting requirement. This alone defeats the proposition that Defendant's failure to move her to the General Laborer position was pretext for discrimination.

Also, Plaintiff asserts she could have been transferred to a Lab Technician role or a DMC Operator role, neither of which required lifting over twenty pounds.[8] Resp. at 34. There appears to be a fact dispute about whether such positions were available at the time of Plaintiff's pregnancy. Exh. 14 at 11:22–24, 13:15-34, 44:14–19, 47:15–50:22 (inconsistent testimony about the availability of these positions); Exh. T, ECF 67-4. Even if these positions were available, Plaintiff

---

[8] Although, the Court notes that Plaintiff never specifically made this request at the time.

fails to show how not moving Plaintiff to one of them is evidence of a hidden discriminatory motive. Plaintiff cites to deposition testimony that others may have been accommodated by moving roles. Exh. 2 at 41:21–25, ECF 60-2. However, this testimony was in response to the question, "Did you ever see a pregnant employee accommodated with – by being changed from their normal position to a general labor position?" *Id*. The affirmative response, "I have seen individuals accommodated by moving them to a different role, yes," indicates that Defendant has accommodated pregnant individuals in this manner. Even if Plaintiff was entitled to be moved, an argument that the Court is not convinced Plaintiff sufficiently supported, the fact that other pregnant individuals have been accommodated in this manner counteracts the notion that Defendant's reasons are based on discriminatory intent.

Despite Plaintiff's other facts falling short of meeting her burden, Plaintiff's third alleged fact does not. Plaintiff argues Mr. Frisbie's emphasis on the amount of lifting required by Break Relief Operators is not credible and thus evidence of pretext. In a general sense, the Court has already addressed Plaintiff's lifting restrictions and the requirements of her job. Mr. Frisbie's emphasis advances the needle little in that regard. However, Plaintiff has a better argument in pointing to Mr. Frisbie's comment of personal concern over Plaintiff's safety if she kept working while pregnant. Exh. 2 at 58:2–5; Exh. 10 at 73:12–74:13, ECF 60-10. The Supreme Court has held that "discrimination on the basis of sex because of safety concerns is allowed only in narrow circumstances," and "that danger to a woman herself does not justify discrimination." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 202 (1991).

Defendant opines that Mr. Frisbie's comment was his personal opinion and cannot constitute direct evidence of discriminatory intent. *See Heim v. State of Utah*, 8 F.3d 1541, 1546–

47 (10th Cir. 1993) ("an offer of . . . discriminatory statements, from which it was argued that the determining cause of employment decision might be inferred, [is] not direct evidence of causation on the employment decision") (quotation omitted).  But that case is distinguishable from this one. There, a direct supervisor, during a conversation about problems with the plaintiff's work, remarked, "Fucking women, I hate fucking women in the office."  *Id.* at 1546.  Shortly after the conversation, the plaintiff (a woman) was denied permission to take a temporary field assignment for which she had previously been granted permission.  *Id.*  The Tenth Circuit upheld the trial court's finding that the comment did not constitute direct evidence of discriminatory intent.  *Id.* The court reasoned that although the comment "was certainly inappropriate and boorish, it was on its face a statement of [the supervisor's] personal opinion."  *Id.* at 1547.

Unlike that case, Mr. Frisbie's comment is not some general opinion.  It is specifically directed at Plaintiff and involves Mr. Frisbie's personal concern over Plaintiff's ability to work while pregnant.  "While '[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus[,]' a plaintiff can show such animus by 'demonstrat[ing] a nexus between the allegedly discriminatory statements and the defendant's decision."  *Minshall v. McGraw Hill Broadcasting Co., Inc.*, 323 F.3d 1273, 1281 (10th Cir. 2003) (quoting *rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994)).  Here, Mr. Frisbie's comment of concern came in the same conversation as when he determined that Defendant could not accommodate her. Thus, a reasonable jury could conclude that Mr. Frisbie's statement expressed discriminatory intent based on Plaintiff's pregnancy, and that the decision to not accommodate stemmed from that intent.

The question is whether this piece of evidence alone is sufficient to find Plaintiff has met her burden of showing pretext.  "Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inference from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). It is not the role of this Court to weigh the evidence. "The plaintiff's burden 'is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief.'" *Deffenbaugh v. Winco Fireworks Intern., LLC*, 2009 WL 662643, at *3 (D. Kan. Mar. 11, 2009). Although it is not a facially strong case of discrimination, Plaintiff has nevertheless met her burden in demonstrating a genuine dispute of material fact. Accordingly, summary judgment in favor of Defendant on this claim would be inappropriate.

## II.     FMLA Interference

To establish an FMLA interference claim, a plaintiff must demonstrate "'(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights.'" *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014) (quoting *Campbell v. Gambro Healthcare, Inc.,* 478 F.3d 1282, 1287 (10th Cir. 2007)). Here, there is no genuine dispute that Plaintiff was entitled to FMLA leave. Rather, Defendant argues that Plaintiff cannot make out either the second or third element of the prima facie case.

As to the second element of adverse action, "'the employee must show that she was prevented from taking the full 12 weeks[ ] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave.'" *Id.* In other words, "an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Id.* Plaintiff asserts that Defendant's adverse action was not giving her a different accommodation such that she had to use

17

FMLA leave instead. In doing so, Defendant "prevented [her] from using her FMLA for the birth of her child and jeopardized the stability and economic security of her family." Resp. at 38.

Yet, there is no genuine dispute that Plaintiff took the full twelve weeks of FMLA leave. *See* Exh. O. She exhausted her FMLA leave on February 20, 2018. *Id.* After that, Plaintiff did not return to work but remained on Short-Term Disability benefits through May 20, 2018. Exh. G at 228:13–229:21. Even after that, Plaintiff chose to remain off work for several more weeks in order to care for her newborn. *Id.* at 229:22–230:11. When Plaintiff wanted to return, Defendant reinstated her to her same position as Break Relief Operator. *Id.*

On these facts, the Court does not find that Plaintiff can establish a prima facie case. Even assuming Plaintiff suffered an adverse employment action, there is no evidence in the record that such action interfered with her ability to take FMLA leave. She utilized the full twelve weeks permitted by law. Plaintiff having to go on short term disability for an extended period after her FMLA leave does not establish any wrongdoing on Defendant's part. *See Singh v. New York State Dep't of Taxation and Finance*, 911 F. Supp. 2d 223, 240 (W.D.N.Y. 2012) (finding no FMLA interference when plaintiff received the full twelve-week leave even though she had an extended one-year leave of absence). Moreover, Plaintiff was able to be reinstated to her same position after her absence from work. Therefore, Plaintiff was not "prevented from taking the full 12 weeks[ ] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Dalpiaz*, 760 F.3d at 1132.

Although Plaintiff has not raised this particular point, the Court addresses one other matter. Other circuits have recognized claims for FMLA interference when the plaintiff involuntarily (*i.e.*, forced by the employer) used all the permitted leave. *See Wysong v. Dow Chemical Co.*, 503 F.3d 441, 450 (6th Cir. 2007). However, those cases also hold that if a plaintiff never requested

18

additional FMLA time, the plaintiff does not have a ripe claim. *Id.* (finding plaintiff does not have viable claim "because she cannot show that she was denied FMLA leave to which she was entitled as a result of [the employer] forcing her to take earlier leave"); *Huffman v. Speedway LLC*, 621 F. App'x 792, 797 (6th Cir. 2015) ("In this case, [the plaintiff] never requested FMLA leave and so her involuntary-leave claim remains unripe."). The record in this case does not indicate that Plaintiff ever requested FMLA leave—and thus was ever denied leave—after she had used her full twelve weeks. Therefore, even under the standard applied in other circuits, Plaintiff failed to establish the elements of her FMLA interference claim. Accordingly, summary judgment for Defendant on this claim is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's Motion [filed May 14, 2021; ECF 57] is **granted in part and denied in part**. The Motion is granted as to the FMLA interference claim, so that claim is dismissed. The Motion is denied as to the pregnancy discrimination claim.

Entered this 9th day of September, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge